```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARK A. CRONIN,                  :         CIVIL ACTION
     individually and on         :
     behalf of those             :
     similarly situated          :
          v.                     :
                                 :
CITIFINANCIAL SERVS., INC.,      :         NO. 08-1523
     et al.                      :
```

_____  MEMORANDUM AND ORDER

McLaughlin, J.                                    July 24, 2008


      The defendant made a loan to the plaintiff.  When it reported the amount of the loan to credit reporting agencies, the defendant reported the full amount of the loan, including all unmatured interest, rather than the unpaid balance.  The plaintiff claims that he has suffered financial harm because of the inflated balance and that the defendant has violated the Fair Credit Reporting Act ("FCRA").  The plaintiff also claims to represent a class of similarly situated persons.  The defendant has moved to compel arbitration and stay all proceedings pursuant to the arbitration agreement the parties signed as part of the loan transaction.  Because the plaintiff's claims fall within the scope of the arbitration agreement and the agreement is valid and enforceable, the Court will compel arbitration and stay these proceedings.

I.      Facts

The plaintiff, Mark Cronin, is an attorney and is acting pro se in this case.  He entered into a loan agreement with the defendant, Citifinancial, on June 16, 2007.[1]  The defendant loaned the plaintiff $6999.91, to be repaid in installments of $197.29 per month over sixty months.  The monthly payments factored in a 22.99% interest rate.  The interest and the principal totaled $11,897.40.  Compl. ¶¶ 6-7.

When the defendant reported the loan to credit reporting agencies, it reported the full amount of the loan, including the 5 years' worth of interest.  Instead of an approximately $7000 debt (the unpaid balance of the plaintiff's loan), his credit report showed an approximately $12,000 debt.  The plaintiff contested the account balance with the credit reporting agencies in October of 2007, and each agency performed a reinvestigation.  The defendant continued to report the accelerated balance of the loan.  Id. ¶¶ 8, 9, 14-16.

The plaintiff was denied credit and suffered adverse action related to several accounts, including an increase of interest rates and a reduction in available credit.  He alleges

---

[1] The plaintiff also filed suit against a second defendant, Washington Mutual Bank, N.A.  He voluntarily dismissed Washington Mutual pursuant to Fed. R. Civ. P. 41(a)(1) on June 10, 2008 (Docket No. 11).

that the defendants' reporting of inflated account figures caused this financial harm.  Id. 16-17.

The parties signed an arbitration agreement as part of the loan transaction.  The agreement gives each party the right to require the arbitration of any claims brought by the other party in court.  It states:  "All disputes between borrower . . . and lender . . . except those specified below,[2] will be resolved by mandatory, binding arbitration.  Thus you give up your right to go to court to assert or defend your rights."  The agreement specifically applies to "any case, controversy, dispute, tort, disagreement, lawsuit or claim . . . includ[ing], without limitation, anything related to . . . [a]ny federal or state statute or regulation, or any alleged violation thereof."  Id. Ex. A.

The agreement contains a special acknowledgments paragraph that states:

> You understand and acknowledge by signing your name to this Agreement that i) a court and/or jury will not hear or decide any Claim governed by this Agreement, ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C.  §§ 1 et seq., as amended, iii) discovery in an arbitration proceeding can be much more limited than in a

---

[2] The specific exclusions are foreclosure and title actions and small claims where less than $15,000 in monetary relief is sought.  Compl. Ex. A.

>court proceeding, and iv) rights to appeal an arbitration award are very limited.

The agreement cautions the parties to read the agreement carefully: "It limits certain of your rights, including your right to obtain redress through court action. By signing below, you agree to the terms contained in this agreement." The agreement also forbids parties from asserting claims on behalf of a putative class: "Because You have agreed to arbitrate all Claims, You may not serve as a class representative . . . against any party entitled to compel arbitration under this Agreement." Id. Ex. A.

The plaintiff filed suit on March 28, 2008, alleging that the defendant's reporting of the loan to the credit reporting agencies violated the FCRA. He also claims to represent a class of similarly situated persons, whose credit has been damaged by the defendant's reporting.

## II. Analysis

The defendant has moved to stay the proceedings and to compel arbitration.[3] The Court must determine 1) whether the

---

[3] Motions to compel arbitration are evaluated under the summary judgment standard set out in Fed. R. Civ. P. 56(c). See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980); Bellevue Drug Co. v. Advance PCS, 333 F. Supp. 2d 318, 322 (E.D. Pa. 2004). The movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court views the

parties entered into a valid arbitration agreement, and 2) whether the specific dispute falls within the scope of that agreement. John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). The Court will not consider the merits of the claims giving rise to the controversy. PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990).

The plaintiff contends that the agreement is invalid because it is a contract of adhesion and lacks mutuality of obligation, it imposes unconscionable costs on him, and the arbitrators who would hear this claims, from the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF"), are not neutral. The plaintiff also argues that the arbitration agreement does not apply to his claims under the Fair Credit Reporting Act, because the FCRA claim was not contemplated by the parties when they entered into the agreement and because arbitration conflicts with the goals of the FCRA. Pl.'s Opp. to Mot. to Compel at 7-10.

A. Validity of the Arbitration Agreement

The first issue is whether the arbitration agreement is a valid contract. The Federal Arbitration Act ("FAA") provides that a written arbitration provision in any contract "evidencing

---

underlying facts and draws all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

a transaction involving commerce" is valid and enforceable, except upon "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA presumptively favors the enforcement of arbitration agreements by making them enforceable to the same extent as other contracts. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178 (3d Cir. 1999). State law applies to issues related to the validity, revocability, and enforceability of arbitration contracts. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 684 (1996).

   1.   Unconscionability

The plaintiff argues that the arbitration agreement is unconscionable because it lacks mutuality of obligation and is a contract of adhesion. Unconscionability is a defensive contractual remedy that relieves a party from an unfair contract. In Pennsylvania, a party challenging a contract for unconscionability has the burden of establishing both procedural and substantive unconscionability. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999).

Procedural unconscionability, also known as "unfair surprise," pertains to the process by which the agreement was reached and the form of the agreement. It includes the use of fine print and unclear language. Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145 (Pa. Super. 1985). The plaintiff

does not challenge the form of the agreement, which is only two pages long, with the pertinent language bolded and often capitalized.

Substantive unconscionability refers to terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. To establish substantive unconscionability, the plaintiff must show that the contract terms are unreasonably favorable to the drafter and that the other party had no meaningful choice but to accept those terms. Harris, 181 F.3d at 181.

The plaintiff argues that the arbitration agreement is a "classic adhesion contract" where the bargaining power is so uneven that the contract must be deemed unconscionable. Disparity in bargaining power does not in itself support a finding of unconscionability. See Bishop v. Washington, 331 Pa. Super. 387, 400 (1984) ("[E]ven assuming that there was a disparity of bargaining power between the parties, it would not be sufficient, by itself, to render the contract unconscionable."). The United States Court of Appeals for the Third Circuit has found, when interpreting the Federal Arbitration Act, that arbitration agreements are not per se unconscionable even if they are contracts of adhesion. See Seus v. John Nuveen & Co., 146 F.3d 175, 184 (3d Cir. 1998) ("[E]ven if we were to assume arguendo that the [arbitration agreement] is

a contract of adhesion, it would not be unenforceable.  A contract of adhesion is invalid only where its terms unreasonably favor the other party.").

The plaintiff has provided no evidence that the agreement's terms unreasonably favor the defendant or that he lacked meaningful choice in accepting the terms of the agreement. He does not contend that he could not have gotten a loan from another source or claim to have negotiated for different terms. See, e.g., Dabney v. Option One Otg. Corp, No. 00-5831, 2001 WL 410543, at *14 (E.D. Pa. Apr. 19, 2001) (finding that an agreement was not unconscionable where the plaintiff failed to provide evidence that she lacked other financing sources or attempted to negotiate over the challenged provision); Zawierucha v. Phila. Contributorship Ins. Co., 740 A.2d 738, 740 (Pa. Super. 1999) (rejecting the plaintiffs' claim that they had no choice but to accept policy language when the plaintiffs had not presented evidence that they tried to negotiate for different terms).

The plaintiff argues that there is a lack of mutuality of obligation in the agreement because foreclosure claims are excluded from arbitration – the defendant may foreclose on a loan without going to arbitration.[4]  He cites Lytle v. CitiFinancial

---

[4] The plaintiff also refers to the small claims exclusion, but this provision applies equally to both parties, and therefore does not support the plaintiff's lack of mutuality

Servs., Inc., 810 A.2d 643 (Pa. Super. 2002), which found a similar foreclosure exclusion unconscionable. The Pennsylvania Supreme Court rejected the Lytle holding in 2007. The court held in Salley v. Option One Mortgage Corp., 592 Pa. 323, 347 (2007), that "the exception from mandatory arbitration for foreclosure . . . does not render the agreement presumptively unconscionable under Pennsylvania law."

     The agreement at issue in this case is a standard arbitration agreement frequently used by the defendant in its business dealings, and it has been subject to litigation a number of times. Similar agreements used by the defendant or its affiliates have been upheld and enforced by numerous other courts, including other courts in the Third Circuit. See, e.g, Cunningham v. CitiGroup, No. 05-3476, 2005 WL 3454312, at *3 (D.N.J. Dec. 16, 2005) (citing cases in which courts upheld the arbitration agreement); CitiFinancial, Inc. v. Newton, 359 F. Supp. 2d 545 (S.D. Miss. 2005). The Court will not invalidate the arbitration agreement. The plaintiff's complaints about the agreement are generalized and unsupported by specific allegations of how he would be harmed through arbitration, and he has not met his burden of showing both procedural and substantive unconscionability.

---

of obligation theory.

2. <u>Arbitration Costs</u>

An arbitration agreement that requires a claimant to bear prohibitive costs can be invalidated because such costs could preclude a litigant from effectively vindicating his rights. <u>Green Tree Fin. Corp.–Ala. v. Randolph</u>, 531 U.S. 79, 90-92 (2000); <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 609 (3d Cir. 2002). The Supreme Court held in <u>Randolph</u> that the burden of proof lies with the plaintiff to show the likelihood of prohibitive costs. 531 U.S. at 92. Without such evidence, the Court said, "the risk that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." <u>Id.</u> at 91.

The plaintiff contends that the arbitration agreement may impose unconscionable costs on him and seeks discovery into what those costs would be. Pl.'s Opp. at 12-13. This claim is too speculative to justify the invalidation of the agreement. The agreement says:

> The Party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except We [the defendant] will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. . . . [T]he arbitrator may award Us . . . the excess of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part.

Compl. Ex. A.  The agreement places most of the cost of arbitration on the defendant, not the plaintiff.  The only way the plaintiff would bear more costs than the equivalent of a court filing fee (an amount he has already paid, when he filed suit in this Court) is if an arbitrator determined that he made an unjustified or bad faith claim against the defendant.

In Cunningham v. CitiGroup, Inc., No. 05-3476, 2005 WL 3454312, at *4-5 (D.N.J. Dec. 16, 2005), the court upheld a similar agreement from one of the defendant's affiliates, with the same arbitration costs clause.  The plaintiffs challenged the provisions on the grounds that they might be forced to pay for the costs of an arbitration appeal and argued that the power of the arbitrator to award fees if the claim had been brought in bad faith was an unfair "loser-pays" provision.  The court said that the defendant would have to pay any appeal costs, because the agreement obligated it to pay all costs of the arbitration proceeding.  It held that because the only expense that the plaintiffs were sure to incur was the cost of the filing fee, and that additional fees would only be imposed upon a finding of bad faith, the plaintiffs' claim that the fees were unconscionable was too speculative to succeed under Randolph.  Id.

The plaintiff's claim about arbitration costs is even more speculative than the claim in Cunningham.  He calls the fee provision "ambiguous" and requests discovery, citing Blair v.

11

Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002), for the proposition that the plaintiff can get discovery into the rates charged by the AAA and the approximate length of similar arbitration proceedings. The plaintiff in Blair had provided an affidavit showing her limited financial capacity and the arbitration agreement had a clause that required the claimant to pay half the costs of the arbitration. Id. The plaintiff in this case has made no such showing of financial hardship and the agreement puts most of the costs onto the defendant. The arbitration costs provision does not render the agreement unconscionable, and the plaintiff's claim is too speculative for the Court to set the agreement aside and order discovery.

3. Arbitrator Neutrality

An arbitration agreement may be unconscionable if it requires that a non-neutral arbitrator hear the claim. See, e.g., Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938-40 (4th Cir. 1999). The plaintiff claims to have "deep concerns" about the neutrality of arbitrators from NAF and AAA, the two organizations identified in the agreement, because they are "repeat players" who frequently arbitrate claims for the defendant, and they are the only allowable source for arbitrators under the agreement. Pl.'s Opp. at 14.

The United States Supreme Court addressed this concern in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991). The plaintiff, who was alleging claims under the Age Discrimination in Employment Act, claimed that arbitrators were biased toward large companies. The Court said that it would not "'indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'" Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 634 (1985)). The Court pointed out that the FAA protected against bias by providing that courts may overturn arbitration decisions when there is evidence of arbitrator corruption or a lack of impartiality. Id.; 9 U.S.C. § 10(b).

The only authority the plaintiff cites in support of his contention that AAA and NAF are biased is a state court case from California, Mercuro v. The Superior Ct. of Los Angeles County, 116 Cal. Rptr. 2d 671 (Cal. Ct. App. 2002). In that case, the court said that the fact that NAF was a repeat player was not enough to invalidate the arbitration agreement, but found that there was a "low threshold of substantive unconscionability in this case" and invalidated the agreement on multiple grounds, including the choice of arbitrator. The agreement had already been deemed both procedurally and substantively unconscionable

because the plaintiff's employer threatened him with discharge if he did not sign the agreement.  Id. at 179.

The plaintiff has provided no such evidence of procedural or substantive unconscionability, and no evidence that AAA or NAF are biased other than his own speculation.  Courts in the Third Circuit have upheld arbitrations involving both organizations.  See, e.g., Delta Funding Corp. v. Harris, 396 F. Supp. 2d 512, 518, 525 (D.N.J. 2004); Sagal v. First USA Bank, N.A., 69 F. Supp. 2d 627 (D.Del.1999), aff'd, No. 99-5873 (3d Cir. Jan. 18, 2001).  The Court will not invalidate the arbitration agreement on the speculative claim that the named arbitration organizations might be biased against the plaintiff.


B.  FCRA Claims and the Scope of the Agreement

The plaintiff claims that his FCRA claims are outside the scope of the arbitration agreement, because the FCRA allows claims to be brought in federal district court and because the FCRA claim was not contemplated at the time the parties entered into the arbitration agreement and therefore is outside of the agreement's scope.  Pl.'s Opp. to Mot. to Compel at 7-8.

When determining the scope of an arbitration agreement, the Court applies a presumption of arbitrability.  According to the United States Supreme Court, any doubts concerning the scope or arbitrable issues should be resolved in favor of arbitration.

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  The Court said that "[a]n order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Id. (quotations omitted).  When an arbitration agreement is broad, this presumption can only be overcome by a specific provision that excludes a particular claim from arbitration, or "the most forceful evidence" of an intention to exclude the claim.  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986).

     The arbitration agreement between the plaintiff and the defendant is broad:  it requires arbitration of all disputes between the borrower and the lender, with the exception of foreclosures and small claims disputes, and explicitly applies to "any case, controversy, dispute, tort, disagreement, lawsuit, or claim . . . includ[ing], without limitation, anything related to . . . [a]ny federal or state statute or regulation, or any alleged violation thereof."  Compl. Ex. A.

     No specific provision in the agreement excludes FCRA claims; in fact, federal statutory claims are specifically included.  The plaintiff argues that the parties did not specifically contemplate FCRA claims when they entered into the agreement, but the inclusion of federal statutory claims belies that contention.  Pl.'s Opp at 8-9; Compl. Ex. A.

The plaintiff claims that the goals of the FCRA conflict with arbitration, but he has not met the heavy burden of establishing that Congress intended to preclude FCRA claims from arbitration. The plaintiff must demonstrate such Congressional intent through 1) the statute's text, 2) its legislative history, and 3) any inherent conflict between arbitration and the statute's underlying purpose. See In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006).

The plaintiff's only argument in support of his position is that the FCRA's procedure to challenge the accuracy of a credit report would "be jeopardized if credit furnishers could arbitrate FCRA claims." Pl.'s Opp. at 8. This is not sufficient to establish Congressional intent to preclude arbitration. The FCRA does not state that claims may not be arbitrated; rather, it allows for damages suits to be brought in federal court. A statute's provision for claims to be brought in district court does not necessarily preclude waiver of that judicial remedy. The FAA mandates enforcement of arbitration agreements for federal statutory claims, and the Supreme Court has upheld the application of the FAA to claims under many important statutory schemes, including the Age Discrimination in Employment Act, the Truth in Lending Act, and the Equal Credit Opportunity Act. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991); Green Tree Fin. Corp. v. Randolph, 531 U.S.

79 (2000).  The Supreme Court said in <u>Randolph</u> that even cases arising under statutes designed to further important social policies may be arbitrated, as long as the prospective litigant can vindicate his rights in the arbitral forum.  531 U.S. at 522.  The United States Court of Appeals for the Third Circuit has upheld arbitration on claims made under the FCRA.  <u>See</u> <u>Mintze</u>, 434 F.3d at 229; <u>see</u> <u>also</u> <u>Berkery v. Cross Country Bank</u>, 256 F. Supp. 2d 359, 365-67 (E.D. Pa. 2003).

     The plaintiff has not put forward any evidence to suggest that he will not be able to vindicate his rights under the FCRA through arbitration, and the Court will grant the defendant's motion to compel arbitration.

     An appropriate Order follows.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARK A. CRONIN,                  :       CIVIL ACTION
    individually and on          :
    behalf of those              :
    similarly situated           :
         v.                      :
                                 :
CITIFINANCIAL SERVS., INC.,      :       NO. 08-1523
    et al.                       :
```

ORDER

AND NOW, this 24th day of July, 2008, upon consideration of the defendant's motion to compel arbitration (Docket No. 8) and the opposition and reply thereto, IT IS HEREBY ORDERED that the motion is GRANTED for the reasons stated in the accompanying memorandum.

This action is stayed pending the completion of arbitration.

                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.